UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00062-GNS-HBB

ALLEN WAYNE HATCHER                                                          PETITIONER

VS.

ANNA VALENTINE, WARDEN                                                       RESPONDENT


**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND RECOMMENDATION**

BACKGROUND

Petitioner Allen Wayne Hatcher filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on April 10, 2020 (DN 1). Respondent Warden Anna Valentine filed a motion to dismiss Hatcher's petition on July 30, 2020 (DN 11). Hatcher responded to the motion (DN 17), and Warden Valentine replied (DN 18). Following Warden Valentine's reply, Hatcher filed a surreply, asserting that Warden Valentine's reply was untimely and should be stricken (DN 19). These matters are now ripe for determination.

FINDINGS OF FACT

The factual underpinnings of this case are described by the Supreme Court of Kentucky:

> At the outset, we note that there are different versions of what occurred on the night in question. We set forth the substantially agreed on facts before the witnesses' retellings diverge.
>
> On the night of November 6, 2003, Edward Tankersly and Christopher Sexton drove from Tennessee to a bar in Bowling Green to have a few drinks and meet women. The pair used drugs at various times that evening. When the bar closed, Tankersly suggested to Sexton that they go to

Hatcher's house in Edmonson County to either meet more women or catch up with old friends. Regardless of the reason, the pair arrived unannounced at Hatcher's house in the early morning hours. Just before entering Hatcher's house, Sexton and Tankersly used cocaine and Tankersly asked Sexton if he "had his back."

Accounts of what happened next differ. Sexton, the Commonwealth's chief fact witness, testified that he and Tankersly were invited inside Hacker's house. However, Sexton, who returned to the car to retrieve a beer, did not follow Tankersly directly into the house. When Sexton entered the house he found Tankersly, Hatcher, James "Rodney" Gross, and Paula Beckner all in the front room. According to Sexton, Hatcher was seated in a recliner and Tankersly was talking with Beckner, who was "breaking up" marijuana at a table in the middle of the room. Sexton claimed to see Tankersly kiss Beckner's hand and testified that this angered Hatcher because Beckner was Hatcher's girlfriend. Hatcher told Tankersly to leave the house, and Hatcher then left the room.

Hatcher and Gross refuted this version of Tankersly's arrival. Gross, who was Hatcher's employee, testified that the two had been working late that night in the woodshop attached to Hatcher's house. Gross testified that he and Hatcher were taking a break and siting with Beckner in the front room of the house when Gross heard a car arrive. Gross contended that as soon as he started to open the front door, Tankersly burst through the entrance, knocking him backward. Gross testified that Hatcher immediately told Tankersly to leave but Tankersly refused. After a brief, heated exchange, Hatcher stood from his recliner and left the room.

Both parties agree to the following: Hatcher returned to the front room carrying a handgun. He demanded that Tankersly leave, and the pair argued. Moments later, Hatcher fired what he characterized as a warning shot into the floor; however, the bullet struck Tankersly in the leg.

Here again, the witnesses' retellings differ. Sexton testified that, on seeing Hatcher fire the gun, he fled the house through the front door. However, not wanting to abandon his friend, Sexton claimed he immediately returned to help Tankersly escape. Sexton met Tankersly at the front door, but before Tankersly could exit, Hatcher shot him in the head.

Gross, on the other hand, testified that Sexton yelled that he had a gun in the car and that he would kill all of them.  Hatcher testified that he saw Sexton and Tankersly meet face-to-face in the front doorway and that he thought Sexton handed Tankersly a gun.  Hatcher did not deny shooting Tankersly in the head, but claimed that Tankersly had begun to turn back toward him and that he only shot Tankersly out of self-defense.

Sexton, with Gross's help, carried Tankersly back to the car, and Beckner provided some towels to help curb his bleeding.  Not knowing the area, Sexton asked for directions to a hospital, and Gross provided them.  However, not long after Sexton drove off, he stopped at another house and asked the residents to call 911.  The police and emergency services arrived and transported Tankersly to the hospital, where he died soon after arrival.

Sexton directed the police to Hatcher's house.  Finding no one at the house, the police obtained a warrant and searched the house.  The police found bullet holes and evidence that someone had attempted to clean up Tankersly's blood.  Furthermore, the police seized a large quantity of drugs, drug paraphernalia, drug manufacturing components, and other evidence of drug trafficking.  The police later found towels soaked with Tankersly's blood in the woods off the road when they were leaving Hatcher's house.

A few hours later, Beckner [c]alled the police and reported that she, Hatcher, and Gross had driven to Elizabethtown and checked into a motel.  They eventually returned to Edmonson County and surrendered to the police.  Hatcher volunteered that the gun he used to shoot Tankersly was inside their car, and the police recovered it.  The police did not recover any other guns.

Following a three day trial in 2005, Hatcher was convicted of murder and sentenced to 30 years' imprisonment.[1]  Hatcher was also convicted of numerous drug charges[2] and sentenced to a total of 10 years' imprisonment to be served concurrently with the murder sentence.  This Court upheld Hatcher's convictions on his appeal as a matter of right.  *Hatcher*, No.2005–SC–0623–MR, 2006 WL 2456354, at *4.

---

[1]   Gross and Beckner were also tried for murder, under the theory of complicity, but the jury acquitted them both of that charge.

[2]   Trafficking in marijuana, eight ounces or more, while in possession of a firearm; two charges of trafficking in a controlled substance first degree while in the possession of a firearm; possession of drug paraphernalia while in possession of a firearm; and possession of a methamphetamine precursor.

3

> In 2008, Hatcher filed a RCr 11.42 motion, arguing, among other things, that his trial counsel was ineffective for failing to object to the murder jury instruction. The trial court denied relief, but the Court of Appeals reversed and vacated Hatcher's conviction and sentence for murder and remanded for a new trial on that charge alone. *Hatcher v. Commonwealth*, 310 S.W.3d 691, 702 (Ky.App.2010), *as modified* (Apr. 23, 2010).
>
> Hatcher was convicted of murder after a second trial in 2015 and sentenced to life imprisonment. Due to the significant time lapse between the two trials, several witnesses from the first trial were unavailable to testify, so large portions of testimony at the second trial consisted of video testimony from the first trial.

Hatcher v. Commonwealth, 2015-SC-000258-MR, 2016 WL 3370999, at *1-3 (Ky. June 16, 2016) (footnotes in original). Hatcher then appealed the second conviction and sentence as a matter of right. Id. at *3. Ultimately, the Supreme Court of Kentucky affirmed Hatcher's murder conviction and life imprisonment sentence. Id. at *9.

On August 3, 2007, Hatcher filed a habeas petition in the Eastern District of Kentucky, pursuant to 28 U.S.C. § 2254, with Hatcher's sole ground for relief being ineffective assistance of appellate counsel (DN 11-5). However, Hatcher filed a *pro se* motion to withdraw his petition for writ of habeas corpus, which was granted (DN 11-6). On January 23, 2018, Hatcher filed a motion to vacate his judgment and sentence, pursuant to Kentucky Rule of Criminal Procedure 11.42 (DN 11-9); Hatcher v. Commonwealth, 2018-CA-001537-MR & 2019-CA-000329-MR, 2020 WL 1490759, at *4 (Ky. Ct. App. Mar. 27, 2020). Hatcher also included a memorandum in support of this motion (DN 11-9). On August 6, 2018, the Edmonson Circuit Court denied Hatcher's 11.42 motion. Hatcher, 2020 WL 1490759, at *5. Hatcher appealed that denial. Id. Two weeks later, on August 20, 2018, "Hatcher filed a motion to vacate his conviction based upon double jeopardy pursuant to [Kentucky Rule of Civil Procedure] 60.02(e)." Id. The motion was denied on December 19, 2018, and Hatcher appealed that denial as well. Id. The two appeals were

4

consolidated for review by the Kentucky Court of Appeals.  Id.  However, the Court of Appeals affirmed the trial court's denial of both post-conviction motions.  Id. at *9.

Following the Kentucky Court of Appeals' affirmation, Hatcher filed his habeas petition in the present case, which was filed on April 10, 2020 (DN 1).

## CONCLUSIONS OF LAW

### Hatcher's Claim that Warden Valentine's Reply Should be Stricken

In Hatcher's surreply, Hatcher asserts that "Respondent had 14-days in which to tender her Response to Petitioner's Response to her Motion to Dismiss.  Hatcher's response was filed on September 2, 2020, making the Respondent's Response due on or before September 18, 2020.  The Respondent's response was filed on October 2, 2020, some 14-days after it was due.  For these reasons it should be stricken as not being timely …" (DN 19 pp. 1).  However, when Hatcher moved the Court for an extension of time (DN 13), the Court granted Hatcher's request and extended his time period to respond until October 5, 2020 (DN 14).  As a result, Warden Valentine's period to file her reply was extended until October 19, 2020 (Id.).

While Hatcher filed his response earlier than the deadline, by filing on September 9, 2020 (DN 17), that does not automatically shorten Warden Valentine's period to reply.  This Court's order that Warden Valentine "may file a response **by no later than October 19, 2020**" remains in effect, especially since this Court opted to supply a date-certain for the filing deadlines (DN 14).  Warden Valentine filed her reply on October 2, 2020, which falls within the specified timeframe (DN 18).  Therefore, Valentine's reply is timely and shall not be stricken.

### Warden Valentine's Motion to Dismiss

Since Hatcher filed his petition for writ of habeas corpus on April 10, 2020 (DN 1), review is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L.

No. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  Lindh v. Murphy, 521 U.S. 320, 336 (1997).

Under AEDPA, there is a one-year statute of limitations that applies to a petition for writ of habeas

corpus filed by a state prisoner.  28 U.S.C. § 2244(d)(1).

The statute of limitations reads as follows:

> (1)    A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --
>
>    (A)    The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B)    The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>
>    (C)    The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D)    The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Since Hatcher pursued a direct appeal the one-year period of limitation began to run on the

date his judgment became final by the conclusion of direct review.  28 U.S.C. § 2244(d)(1)(A).

If the state prisoner exhausts the direct appeal process in the state courts and timely files a

petition for writ of certiorari, conclusion of direct appeal under § 2244(d)(1)(A) occurs when the

Supreme Court of the United States denies the petition for writ of certiorari or affirms the state

conviction.  Jimenez v. Quarterman, 555 U.S. 113, 119-21 (2009); see Holland v. Florida, 560

U.S. 631, 635 (2010) (direct review of Holland's conviction concluded on the date the Supreme

Court denied his petition for writ of certiorari).  If the state prisoner exhausts the direct appeal process in the state courts but does not to file a petition for writ of certiorari, conclusion of direct appeal under § 2244(d)(1)(A) occurs when the time for filing the petition for writ of certiorari with the Supreme Court of the United States expires.  <u>Jimenez</u>, 555 U.S. at 119-21; <u>Bronaugh v. Ohio</u>, 235 F.3d 280, 283 (6th Cir. 2000) (one-year period of limitation in § 2244(d)(1)(A) does not begin to run until the time expires for filing a petition for writ of certiorari).

"In state criminal cases, such as this one, the time to file a petition for writ of certiorari is 'prescribed by the rules of the Supreme Court.'"  <u>Giles v. Beckstrom</u>, 826 F.3d 321, 323-25 (6th Cir. 2016) (quoting 28 U.S.C. § 2101(d)).  Rule 13.1 of the Rules of the Supreme Court of the United States indicates that a petition for writ of certiorari to review a State court judgment "is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."  Rule 13.3 directs that "[t]he time to file a petition for writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)."  The Sixth Circuit has held that "the date of the entry of the judgment or order" in Supreme Court Rule 13.3 refers to the date on which the Kentucky Supreme Court issued its opinion and order affirming a defendant's conviction, not 21 days later when the opinion becomes "final" under KY. R. CIV. P. 76.30(2)(a).  <u>Giles v. Beckstrom</u>, 826 F.3d 321, 323-25 (6th Cir. 2016).

After Hatcher's second conviction in 2015, he directly appealed to the Kentucky Supreme Court, as a matter of right.  <u>Hatcher v. Commonwealth</u>, 2015-SC-000258-MR, 2016 WL 3370999, at *3 (Ky. June 16, 2016); KY. CONST. § 110(2)(b).  The Kentucky Supreme Court affirmed Hatcher's conviction and life imprisonment sentence on June 16, 2016.  <u>Hatcher</u>, 2016 WL 3370999, at *9.  Hatcher concedes that he did not file a petition for writ of certiorari to the United

7

States Supreme Court (DN 1 PageID 3). Therefore, Hatcher's one-year statute of limitations began to run on September 14, 2016, and it expired on September 14, 2017. The tolling provision in § 2244(d) does not resuscitate "the limitations period (*i.e.*, restart the clock at zero); it can only pause a clock that has not yet fully run." Vorman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) (citation omitted). Thus, "[o]nce the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." (Id.).

As Hatcher's period of limitations under § 2244(d) expired on September 14, 2017, the motion to vacate pursuant to Kentucky Rule of Criminal Procedure 11.42, which was filed on January 23, 2018 (DN 1 PageID 4), provides no relief to the already expired statute of limitations. Therefore, Hatcher's petition, pursuant to 28 U.S.C. § 2254, is untimely because the statute of limitations lapsed by 131 days.

Hatcher recognizes this lapse and claims that "his petition may appear untimely on its face, however, requests the Court to Order briefing and expansion of the record ... [to] support[] the application of equitable tolling" (DN 1 PageID 11); *see also* (DN 17 PageID 266).

Warden Valentine asserts that "Hatcher has failed to demonstrate why he should be entitled to equitable tolling," relying on the Sixth Circuit's finding in Plummer v. Warren, 463 Fed. App'x 501 (6th Cir. 2012), and that Hatcher "has failed to attach any affidavits or proof" (DN 18 PageID 284). Hatcher, in his surreply, asserted that his "case fits squarely within the rubic [*sic*] of Plummer" because "on May 24, 2017[, Hatcher] was placed in Nursing Care for surgery prep, and all his property was packed up; afterwards he was placed in a restricted Dorm 10, at which time he was informed that all his legal papers had been lost in property, and they were not found until December 19, 2017" (DN 19 pp. 2). Further, Hatcher claims that "[w]hile [he] did not attach any affidavits, Kentucky law, which must be applied pursuant to FRE 302, states that 'exhibits for

which a pleading is premised are controlling,' <u>Yates v. Mammoth Cave National Park Assn.</u>, 55 S.W.2d 348, 349 (Ky. 1932) …" (<u>Id.</u>).

The one-year statute of limitations in 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010). To be entitled to an equitable tolling the petitioner must show (1) he has been diligently pursuing his rights, and (2) some extraordinary circumstance stood in his way and prevented timely filing. <u>Holland</u>, 560 U.S. at 649 (citing <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)). The United States Supreme Court has provided the following comments about making this equitable assessment:

> We have said that courts of equity "must be governed by rules and precedents no less than the courts of law." <u>Lonchar v. Thomas</u>, 517 U.S. 314, 323, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996) (internal quotation marks omitted). But we have also made clear that often the "exercise of a court's equity powers ... must be made on a case-by-case basis." <u>Baggett v. Bullitt</u>, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). In emphasizing the need for "flexibility," for avoiding "mechanical rules," <u>Holmberg v. Armbrecht</u>, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946), we have followed a tradition in which courts of equity have sought to "relieve hardships which, from time to time, arise from a hard and fast adherence" to more absolute legal rules, which, if strictly applied, threaten the "evils of archaic rigidity," <u>Hazel–Atlas Glass Co. v. Hartford–Empire Co.</u>, 322 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). The "flexibility" inherent in "equitable procedure" enables courts "to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct ... particular injustices." <u>Ibid.</u> (permitting postdeadline filing of bill of review). Taken together, these cases recognize that courts of equity can and do draw upon decisions made in other similar cases for guidance. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.

<u>Holland</u>, 560 U.S. at 649-650.

Notably, equitable tolling asks "whether federal courts may excuse a petitioner's failure to comply with federal timing rules, an inquiry that does not implicate a state court's interpretation of state law." <u>Holland</u>, 560 U.S. at 650. Equitable tolling is granted sparingly and is evaluated on

a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." Ata v. Scutt, 662 F.3d 736, 741 (6th Cir.2011).

A movant's *pro se* status and his lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing of the petition. *See* Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 464 (6th Cir. 2012).

Warden Valentine relies upon the Sixth Circuit's unpublished opinion in Plummer v. Warren, 463 Fed. App'x 501 (6th Cir. 2012), to assert that Hatcher's petition is insufficient to meet the requirement for equitable tolling because Hatcher "has failed to attach any affidavits or proof" (DN 18 PageID 284).   However, Plummer is distinguishable from the present case.   While Plummer was asserting equitable tolling as a means of curing a time bar, Plummer was claiming her "severe physical disabilities," such as "migraines, hip deterioration and dislocation, severe pain, wheelchair confinement, seizures, liver disease, hepatitis C, pneumonia, severe stomach troubles, and rectal bleeding" rendered her "physical unable to go to the law library, prepare filings, and could not understand the law." Plummer, 463 Fed. App'x at 505-06.   In contrast, Hatcher is not asserting physical disabilities, or his surgery, as a cure to his time bar, nor has his argument evolved into claiming that his surgery rendered him incapable of filing his 11.42 motion.   Instead, Hatcher's primary argument is that he would have filed his 11.42 motion within the applicable timeframe, but the silence from the Department of Public Advocacy, in tandem with the disappearance of Hatcher's legal documentation, created the exceptional circumstances (DN 19).

In supporting his claim that he is entitled to equitable tolling of the one-year statute of limitations, Hatcher asserts:

A.   On January 2, 2017, Hatcher wrote his appellate attorney Gerhart Landon (Landon) a second time requesting assistance from the Department of Public Advocacy (DPA) to prepare and file his RCr 11.42 motion.

B.   On March 8, 2017, having not received any response from DPA Landon, Hatcher wrote the DPA requesting assistance in filing his RCr 11.42 motion as he was having health issues and was unable to do so on his own.  Ex. 2

C.   On June 14, 2017, having not heard any response from his letters in ¶¶A-B, Hatcher wrote the DPA again stressing the need for assistance in filing his RCr 11.42 motion as his time was running, that he had been placed in Nursing Care Facility (NCF) on May 24, 2017 in preparation for surgery, he was now in Dorm 10, a restricted dorm where there is no access to the yard or legal office, and that all his legal papers had been misplaced during the packup [*sic*].  Ex. 3

D.   No one from the DPA ever contacted Hatcher in response to any of his letters.

E.   On August 16, 2017, Hatcher wrote Lt. Pollick, the property room officer regarding his legal documents that got misplaced, reminding him, as instructed to look for them.  Ex. 4

F.   Not hearing anything back from Lt. Pollick, Hatcher wrote him again on September 12, 2017 stressing that he needed his legal documents for his RCr 11.42 motion before his time ran out.  Ex. 5

G.   On September 14, 2017, Lt. Pollick hand wrote on Exhibit 5 that "he would look for his legal work when he had the time, and would let him know when he found it."

H.   On November 1, 2017, Hatcher wrote Lt. Pollick expressing his anger as it should not be that hard to find his legal work as it has to be in the property room."  Ex. 6

I.   On December 4, 2017, not hearing anything from Lt. Pollick, Hatcher wrote him again, and not trying to be disrespectful stating there is no reason why his legal work can't be found and that he needed it now.  Ex. 7

J.   On December 19, 2017, Lt. Pollick hand wrote on Exhibit 7 stating that Hatcher's legal work had been found and sent to the legal office.

> K.   The legal office was closed from Wednesday December 20, 2017 and
>       pretty much remained closed until January 2, 2018.
>
> L.   Hatcher was finally able to retrieve his legal file on January 4, 2018.
>
> M.   Hatcher obtained an inmate legal aide for assistance and was able to
>       file his RCr 11.42 motion within 19-days on January 23, 2018.

(DN 17 PageID 266-68) (formatting in original).  Hatcher has also included copies of the letters

he has sent to Mr. Gerhart Landon, the Kentucky Department of Public Advocacy, and Lieutenant

Pollick (DN 17-1).  Not included in the above list of correspondence, there appears to be reference

to a letter sent in October 2016, where Hatcher attempted to previously contact Mr. Gerhart Landon

(DN 17-1 PageID 277) ("I wrote my appellate attorney Mr. Landon about assisting me in this

matter, but he has not responded to my previous letters written in October 2016 and January 2017).

    The persistence by Hatcher in writing at least three letters to the Department of Public

Advocacy seeking assistance, in addition to four messages to Lieutenant Pollick, shows a diligent

pursuing of his rights.  Furthermore, most of Hatcher's communications highlight the necessity of

an expeditious solution, due to the impending deadline (DN 17-1).  Even after Hatcher's one-year

statute of limitation expired, Hatcher continued to communicate with Lieutenant Pollick in the

hopes of finding his documents, which would allow Hatcher to file his 11.42 motion.  As such,

Hatcher's meets the first prong in the Holland two-part analysis.

    Turning to the second part of the Holland analysis, the Court must determine whether some

extraordinary circumstance stood in Hatcher's way and prevented timely filing.  Holland, 560 U.S.

at 649.  When looking to the facts stated by Hatcher, it appears that he may have pleaded a case

for extraordinary circumstances.  However, review of the relevant caselaw shows otherwise.  This

judicial district, in addition to many others across the county, have stated that "[g]eneral allegations

of transfers and lack of access to legal materials are not exceptional circumstances warranting

equitable tolling, especially where a petitioner does not specifically explain or present evidence demonstrating why the circumstances he describes prevented him from timely filing a habeas petition." Ramey v. Mazza, No. 5:19CV-P161-TBR, 2020 WL 2561124, at *3 (W.D. Ky. May 19, 2020); see also Andrews v. United States, No. 17-1693, 2017 WL 6376401, at *2 (6th Cir. 2017); Paulcin v. McDonough, 259 Fed. App'x 211, 213 (11th Cir. 2007) (finding equitable tolling not warranted where petitioner alleged that he was denied access to the law library and his legal records, but failed to show "how his inability to obtain legal materials thwarted his efforts to file a timely federal proceeding"); United States v. Fredette, 191 Fed. App'x 711, 713 (10th Cir. 2006) (finding that petitioner was not entitled to equitable tolling of his § 2255 petition, despite his transfer to as many as six different facilities, because even if petitioner was denied access to legal materials in violation of his constitutional right of access to the courts, he failed to show how the transfers affected his ability to file timely); Dodd v. United States, 365 F.3d 1273, 1282-83 (11th Cir. 2004); Akins v. United States, 204 F.3d 1086, 1089-90 (11th Cir. 2000); but see Jones v. United States, 689 F.3d 621 (6th Cir. 2012) (granting equitable tolling due to a combination of a series of prison transfers, illiteracy, and a variety of medical conditions).

The Court for the Eastern District of Michigan encountered a similar circumstance when it opined:

> In the present case, petitioner fails to specify how he attempted to timely pursue habeas relief during the relevant time period (with or without access to this legal materials), when he obtained access to his legal materials, and or how the lack of access to those materials for a portion of the one-year period prevented him from timely filing his habeas petition. To be sure, even while in administrative segregation without his legal paperwork (and nearing the end of the one-year period), the petitioner could have timely submitted a "bare bones" habeas petition listing his claims and later supplementing his pleadings as necessary. Equitable tolling is not warranted under such circumstances.

13

Stennis v. Place, No. 16-CV-14262, 2018 WL 3390444, at *4 (E.D. Mich. July 12, 2018).

Here, Hatcher did not assert any information which may detail acts he completed in the interim of receiving his documents, such as attempting to draft a new habeas petition or seeking the assistance of a legal aide.  Instead, it appears that Hatcher merely crafted his letters and then waited for the assistance of the Department of Public Advocacy or the discovery of his documentation.  Further, Hatcher has not shown "how his inability to obtain legal materials thwarted his efforts to file a timely [11.42 motion]." Paulcin, 259 Fed. App'x at 213.  Further, Hatcher had previously filed a *pro se* 11.42 motion and an extensive memorandum on January 23, 2018, with the Edmonson Circuit Court (DN 11-9), which only further highlights his ability to operate to at least file a "bare bones" habeas petition without the direct assistance of counsel.

While the Court is sympathetic to Hatcher's attempts to contact the Department of Public Advocacy and commends his attempts to retrieve his documentation, the misplacing of Hatcher's legal documents alone does not meet the standard for granting equitable tolling.  Based on the aforementioned facts, Hatcher's § 2254 petition is not entitled to equitable tolling.  As such, Hatcher's petition remains untimely by a period of 131 days.

## Certificate of Appealability

In Slack v. McDaniel, the Supreme Court established a two-pronged test that is used to determine whether a Certificate of Appealability should issue on a habeas claim denied on procedural grounds.  529 U.S. 473, 484-485 (2000).  To satisfy the first prong of the Slack test, Hatcher must demonstrate "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Id. at 484.  To satisfy the second prong, Hatcher must show "jurists of reason would find it debatable whether the district court was correct in its

procedural ruling."[3]  Id.  Notably, the Court need not conduct the two-pronged inquiry in the order

identified or even address both parts if Hatcher makes an insufficient showing on one part.[4]  Id. at

485.  For example, if the Court determines Hatcher failed to satisfy the procedural prong then it

need not determine whether the constitutional prong is satisfied.  Id.

This example is precisely applicable here.  Based upon the analysis above, Hatcher has

failed to meet the procedural prong.  Reasonable jurists would not conclude the Court erred in

dismissing Hatcher's petition as time barred due to the expiration of the statute of limitations.  As

such, the undersigned recommends that a Certificate of Appealability be denied for Hatcher's

petition pursuant to 28 U.S.C. § 2254.

RECOMMENDATION

For the aforementioned reasons, the undersigned recommends that the District Court

**GRANT** Warden Valentine's motion to dismiss as untimely filed (DN 11).  Furthermore, the

undersigned recommends that Hatcher's petition for writ of habeas corpus, pursuant to 28 U.S.C.

§ 2254, should be **DISMISSED WITH PREJUDICE**, as the petition is time barred.  Finally, the

undersigned recommends that the Court **DENY** a Certificate of Appealability.

*H. Brent Brennenstuhl*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

December 14, 2020

---

3  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

4  "Each component of the § 2253(c) showing is part of a threshold inquiry, and a Court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue of whose answer is more apparent from the record and arguments."  Slack, 529 U.S. at 485.

NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and FED. R. CIV. P. 72(b)(1), the undersigned magistrate judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2).  If a party has objections, such objections must be timely filed or further appeal is waived.  Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

H. Brent Brennenstuhl
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

December 14, 2020

Copies:          Counsel of Record
                 Allen Wayne Hatcher, *pro se*

16